## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

| | | |
|---|---|---|
| **MATTHEW JONES,** | § | |
| **YSIDRO RENTERIA, and** | § | |
| **WILLIAM L. JONES CARR,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-30** |
| | § | |
| **AMBER M. KING,** | § | |
| **CHRIS H. BUSSE, and** | § | |
| **BRANDON W. JONES,** | § | |
| | § | |
| *Defendants.* | § | |

## COMPLAINT

TO THE HONORABLE COURT:

Plaintiffs Matthew Jones, Ysidro Renteria, and William L. Jones Carr (collectively, "**Plaintiffs**") file this Complaint against Defendants Amber M. King, Chris H. Busse, and Brandon W. Jones (collectively, "**Defendants**"), and respectfully state the following:

### I.    INTRODUCTION

1.    As public officials in Loving County, Texas, the Defendants took an oath to preserve, protect, and defend the Constitution and laws of the United States and of Texas. That oath includes an obligation to protect the constitutional rights of *all* citizens—even those with whom the officials disagree on personal or political matters. The Defendants violated their oaths, abused their authority, and carried out a premeditated and vindictive scheme to punish those who were unwilling to bend to their political, personal, and financial demands. This suit seeks to hold Defendants accountable to their oaths and for their misconduct.

2.    The Plaintiffs are lifelong residents and voters of Loving County. In May 2022, each Plaintiff received a jury summons to appear at the Justice of the Peace Court, over which

Defendant Amber M. King presides.  Each Plaintiff appeared.  As deputies of Defendant Chris Busse (the Loving County Sheriff) and Defendant Brandon W. Jones (the Loving County Constable) watched, each Plaintiff truthfully swore that he was a resident of Loving County and thus eligible to serve as a juror.  With no hearing, no evidence, and nothing resembling Due Process, King summarily ordered that each Plaintiff be immediately arrested.  Deputy Sheriffs, acting at the direction of the Defendants, then publicly arrested the Plaintiffs, handcuffed them, and drove them to the jail in a nearby county, where they were held for several hours.  The Plaintiffs later learned that they had been charged with "contempt" for acts "disrespectful to the court."

3.      The summons, arrest, and charges were a ruse.  The Defendants capitalized on the partisan fervor over supposed voter fraud—and ambiguous language in recently passed legislation known as Senate Bill 1111 ("**SB 1111**")—as a pretense to summon, arrest, jail, and intimidate their political and personal rivals.  The Defendants did so with full knowledge that Plaintiffs *are* legal residents and entitled to vote in Loving County, even after passage of SB 1111.  The Defendants even shamelessly boasted to the media that they hoped to "thin out" the voter rolls in Loving County—all but announcing their apparent belief that the U.S. Constitution does not reach into the ranch lands of west Texas.

4.      Defendants are wrong.  The Plaintiffs enjoy the protections of the First, Fourth, and Fourteenth Amendments to the United States Constitution, the Civil Rights Act, the Voting Rights Act, and the common law doctrines of the State of Texas, just as much as any other citizen.  These laws do not permit local officials to manipulate the levers of power to punish political opponents, settle personal scores, and intimidate rightful voters from exercising their lawful franchise.

5.      Plaintiffs now ask the Court to hold the Defendants accountable for their abuse of power and brazen violation of Plaintiffs' rights.  Specifically, Plaintiffs ask the Court to award

compensatory and punitive damages, declaratory relief, and injunctive relief to prevent the Defendants from engaging in such misconduct in the future.

## II.    PARTIES

6.    Plaintiff Matthew Jones ("**Matthew Jones**") is an individual residing in Loving County, Texas.

7.    Plaintiff Ysidro Renteria ("**Renteria**") is an individual residing in Loving County, Texas.

8.    Plaintiff William L. Jones Carr ("**Carr**" or "**William Carr**") is an individual residing in Loving County, Texas.

9.    Defendant Amber M. King ("**King**" or "**Amber King**") is an individual residing in Loving County, Texas.  King currently serves as Justice of the Peace for Loving County.   She can be served at 9032 E. Valeria Lane, Mentone, Texas, or wherever she may be found.  King is being sued in her personal and official capacities.

10.    Defendant Christopher H. Busse ("**Busse**") is an individual residing in Loving County, Texas.  Busse currently serves as the Sheriff for Loving County.  He can be served at 101 SE Avenue B, Mentone, Texas, or wherever he may be found.  Busse is being sued in his personal and official capacities.

11.    Defendant Brandon W. Jones ("**Brandon Jones**") is an individual residing in Loving County, Texas.  Brandon Jones currently serves as the Constable for Loving County.  He can be served at 701 County Road 405, Mentone, Texas, or wherever he may be found.  Brandon Jones is being sued in his personal and official capacities.

## III.    JURISDICTION

12.    Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured by the U.S. Constitution.

13.     Plaintiffs also bring this suit under 52 U.S.C. § 10307(b) to redress the intimidation, coercion, threat, and attempted intimidation, coercion, and threat, to voting or attempting to vote.

14.     The Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States and involve the assertion of deprivations, under color of state law, of rights under the United States Constitution.

15.     The Court has supplemental jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1367.

16.     The Court has personal jurisdiction over the Defendants, who are sued in their personal and official capacities and are residents of Texas.

17.     Venue is proper in this Court under 29 U.S.C. § 1391(b) because a substantial part of the events that give rise to Plaintiffs' claims occurred in this judicial district.

18.     This Court has the authority to enter declaratory judgment and provide injunctive relief under Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. §§ 2201 and 2202.

## IV.     FACTUAL BACKGROUND

### A.  Each of the Plaintiffs is a resident of Loving County, Texas.

19.     Loving County is located along the Texas-New Mexico border in West Texas.  It is Texas' smallest county by population, with only 57 residents identified in the most recent census. The County has benefited substantially from the recent boom in oil and gas drilling.  As oil revenues and property values have increased over the past twenty years, so have receipts from Loving County property taxes.  In 2008, the County commanded a budget of approximately $2 million.  By 2020, that total had increased to approximately $27 million.

20.     The Jones family has been firmly and proudly rooted in Loving County for generations.  Plaintiff Matthew Jones is the grandson of long-time former Loving County Sheriff

Elgin (Punk) Jones.   Matthew's father, Skeet Jones, is currently the Loving County Judge. Matthew has been registered to vote in Loving County since he became eligible to vote as a teenager.  He owns property in Loving County where he regularly stays overnight.  Matthew Jones, his family, and their family-owned ranch corporation are model citizens—selflessly donating time, effort, and hundreds of thousands of dollars annually to charities and religious organizations in and around Loving County.

21.     Like the Jones family, the Renteria family has been a fixture in Loving County for almost a century.  Ysidro Renteria was born and raised in Loving County.  He registered to vote in Loving County when he was 18 years old and has consistently voted in the County for over 40 years.  Renteria owns property and conducts business in Loving County and neighboring counties. Renteria sleeps several nights a week on the property that he and his family own in Loving County. A dedicated public servant, Renteria currently serves as a County Commissioner for Loving County, a position he has held since  2011.

22.     William Carr has been registered to vote in Loving County since he was 18. He warehouses and sells lubrication products out of a warehouse in Mentone and owns property in Loving County.  His mother is Mozelle Carr, the current Loving County Clerk.  His uncle is Skeet Jones, the County Judge, and Matthew Jones is his first cousin.   William Carr regularly stays overnight in Loving County.

**B.   The Plaintiffs and the Defendants have become personal and political adversaries.**

23.     In the months leading up to May 25, 2022, each of the Plaintiffs found themselves in personal, financial, or political disputes with one or more of the Defendants.

24.     Defendant Brandon Jones is cousin to both Matthew Jones and William Carr. Matthew Jones' father—County Judge Skeet Jones—initially supported Brandon Jones' efforts to be Constable of Loving County. Brandon Jones' father, Richard Jones, is Judge Skeet Jones'

5

brother and a co-owner of the Jones family ranch in Loving County.

25.    Brandon Jones' wife (Holly Jones) worked for the Jones family ranch until January 2022, when she announced her intention to run for County Clerk against Mozelle Carr (her husband Brandon's aunt and William Carr's mother).  Despite owing his very livelihood to Judge Skeet Jones and being the beneficiary of other generous gifts from Judge Jones' family, Brandon Jones has publicly maligned and shamelessly criticized Judge Jones in the media and has closely aligned himself with Amber King.

26.    In approximately September 2021, Brandon Jones approached Renteria before a County Commissioners meeting.  Brandon Jones asked Renteria to support a request to hire two additional deputies to work under Brandon Jones.  Renteria pushed back, noting that Loving County (a county with a population less than 100) already had several deputies and that Renteria did not see why it needed more.  Brandon Jones responded that he wanted more deputies under his command.  Renteria said that he would consider the request but, after hearing arguments regarding the justification for and expense of additional deputies at the meeting, Renteria concluded that the extra deputies were not in the County's best interest and voted against the request.  Brandon Jones has refused to speak to Renteria ever since.  Instead, as explained herein, Brandon Jones embarked with King and Busse in a coordinated and personal campaign of retaliation and intimidation against Renteria and his family.

27.    Amber King has been the Loving County Justice of the Peace since 2020.  Her husband, Raymond King, serves alongside Renteria as a Loving County Commissioner.[1]  In December 2021, Renteria was asked to serve on the Loving County Appraisal Board, on which Amber King and Busse also served.  At the March 2022 meeting of the Appraisal Board, both

---

[1] Neither Amber King nor her husband Raymond King are natives of Loving County.  They moved there when Raymond took a job at one of several "man camps" for oil workers.

Amber King and Busse told Renteria that they believed that Renteria did not live on his property in Loving County and should resign from the Appraisal Board.  As a basis for their position, King and Busse cited then-recently enacted Senate Bill 1111, 2021 legislation that changed certain residency requirements for voter registrations.  Both King and Busse voted for a resolution asking Renteria to resign.  Renteria denied their allegations, voted against the resolution, and refused to resign.

28.     Raymond King then made a similar motion seeking Renteria's resignation in Loving County Commissioners Court.  The motion did not receive a second and failed.

29.     Amber King has also repeatedly clashed with Judge Skeet Jones on political and personal issues and has filed multiple baseless grievances against Judge Jones with State authorities, including a childish grievance claiming that Judge Jones raised his voice to King. None of the grievances have resulted in any disciplinary action being taken against Judge Jones.

### C.  Plaintiffs conspired to arrest Defendants under false pretenses.

30.     Sometime before May 25, 2022, each of the Plaintiffs received a summons to appear for jury selection in Justice of the Peace Court in Loving County.  It was not unusual for Plaintiffs to receive jury summonses for District Court, but none could recall ever receiving such a summons for Justice of the Peace Court.

31.     Each Plaintiff appeared as summoned at the Loving County Courthouse on May 25, 2022, along with several other individuals.  Richard Jones, the father of Brandon Jones, was also in the jury pool.  Shortly after Carr arrived at the courthouse, Richard Jones approached Carr, put his face up close to Carr's face, and asked whether Carr thought he was "getting what he deserved."  Upon information and belief, Richard Jones was made aware of and tacitly approved the premeditated plot to arrest his own nephews, William Carr and Matthew Jones.

32.     As Brandon Jones and one of Busse's deputies watched,  King told the prospective

jurors that if they falsely claimed to be residents of Loving County they could be charged with contempt of court or aggravated perjury. King then proceeded to swear in the prospective jurors collectively. Each of the Plaintiffs swore that they were eligible to serve as voters. Without further discussion, presentation of evidence, or opportunity for Plaintiffs to be heard, King then identified each of the Plaintiffs by name and ordered them to be arrested.

33.     Brandon Jones and a Deputy Sheriff escorted Plaintiffs out of the room into an enjoining hallway, where the Plaintiffs were ordered to empty their pockets. Deputies then placed handcuffs on each of the Plaintiffs and walked them to waiting vehicles. The deputies drove the Plaintiffs to the Winkler County jail at high rates of speed, with lights and sirens blaring. Renteria objected to the speed, telling the deputy that he was needlessly putting all their lives in jeopardy. The deputy would not respond to Renteria.

34.     At the Winkler County jail, the Plaintiffs were fingerprinted, photographed, and jailed for approximately five hours before they were released. Plaintiffs were later informed that they were arrested for contempt of court. Amber King did not hold any hearings, collect any evidence, or permit any of the Plaintiffs the opportunity to establish their residency before ordering them to be arrested.

35.     There was no exigency or emergency that led to Plaintiffs' arrest. None of the Plaintiffs were being disruptive or disobeying any of King's orders. The jury selection was merely a ruse to force Plaintiffs to appear for jury selection, ask them to swear to their residency, and provide a pretense for their unlawful arrest.

36.     On information and belief, prior to May 25, 2022, the Defendants conspired and coordinated with each other to concoct the jury selection ruse and arrest the Plaintiffs. Each of the Defendants acted on this agreement, including by facilitating the mailing of jury summonses, being present for the arrest of Plaintiffs, directing subordinates to arrest Plaintiffs and drive them to the

Winkler County jail, and by encouraging, approving, and supporting King's sham jury selection and oath.

**D.  SB 1111 does not provide a valid basis for Defendants' actions.**

37.    In public statements before and after May 25, 2022, Defendants claimed that SB 1111 changed residency requirements for purposes of voting and made the Plaintiffs ineligible to vote in Loving County.  These statements were knowingly false.

38.    SB 1111 was enacted in 2021 and changed several sections of the Texas Elections Code.  Among other changes, SB 1111 amended the Elections Code to provide that "[a] person may not designate a previous residence as a home and fixed place of habitation unless the person inhabits the place at the time of designation and intends to remain."  TEX. ELEC. CODE ¶ 1.015(f).

39.    Shortly after SB 1111 was enacted, two non-profit organizations challenged the constitutionality of SB 1111 in a suit against the Attorney General of Texas and various state officials in the United States District Court for the Western District of Texas, Austin Division, captioned as *Texas State LULAC, et al. v. Elfant, et al.*, Cause No. 1:21-CV-546-LY (the "**Austin Litigation**").

40.    In discovery in the Austin Litigation, the plaintiffs deposed Brian Keith Ingram, the Director of the Elections Division of the Texas Secretary of State's Office.  Mr. Ingram testified that he had spoken at length with Sheriff Busse regarding the impact of SB 1111 on voters in Loving County.  Mr. Ingram testified that he told Busse that if a voter spent even a few days sleeping in a residence in Loving County, then that voter was validly registered in Loving County:

> There are other persons who have a house or another sort of place to live in Loving County.  And they do come visit, you know, a week or two a year. And I told the sheriff that places *were inhabited* by those people who spent at least some time during the year at that location.  *So he could not successfully challenge those persons* . . . .

41.    On information and belief, prior to May 25, 2022, each Defendant was aware that

each of the Plaintiffs owned property, conducted business, and at times slept overnight in Loving County.  The Defendants were also aware that Mr. Ingram had told Busse that a person who spends even "a week or two" each year in Loving County could legally vote in Loving County, ***even after passage of SB 1111***.

42.     Defendants were thus well aware that SB 1111 did not render any of the Plaintiffs ineligible to vote in Loving County.  Yet Defendants used SB 1111—and the partisan fervor over alleged voter fraud—as a pretense to deprive Plaintiffs of their liberty, punish Plaintiffs for their votes and political positions, and attempt to intimidate Plaintiffs and other perceived political opponents from exercising their right to vote in Loving County.

43.     Even if it applied, SB 1111 could not be enforced against the Defendants.  Shortly after the May 25 arrests, the Federal Court in the Austin Litigation found SB 1111 unconstitutional and ordered the Texas Attorney General and other defendants in that case permanently enjoined from enforcing its provisions.

44.     Through this corrupt and malicious scheme, Defendants used the color of state law under false pretenses and for illegitimate purposes—to deprive Plaintiffs of their rights to vote, to free speech, and to be free of unreasonable searches and seizures.  Plaintiffs now ask this Court to hold Defendants accountable for this flagrant and unconstitutional abuse of power.

## V.     <u>CAUSES OF ACTION</u>

45.     Pursuant to Federal Rule of Civil Procedure 8(d), Plaintiffs assert the following claims individually, additionally, and/or alternatively as permitted by law.

<u>COUNT ONE</u>
**U.S. Const. Amendments IV, XIV; 42 U.S.C. § 1983**
**Undue Deprivation of Liberty**
**(All Plaintiffs Against All Defendants)**

46.     Under Federal Rule of Civil Procedure 10(c), Plaintiffs incorporate by reference all the allegations set forth above.

47.     The Civil Rights Act of 1871, now codified as 42 U.S.C. § 1983, provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.

48.     The Fourth Amendment to the United States Constitution, incorporated and applied to the states through the Fourteenth Amendment, includes a right to be free from unreasonable searches and seizures.

49.     An arrest can be an unreasonable seizure when there is no legal basis for the arrest, including when the officials involved in the arrest disregard state law and when there is no probable cause for the arrest.

50.     At all times relevant to this Complaint, each of the Defendants acted under the color of state law.

51.     Defendants acted knowingly and willfully in the actions described herein, including by causing and facilitating the issuance of jury summonses to Plaintiffs, participating in the planning and organization of the jury selection on May 25, 2022, ordering Plaintiffs arrested, and then directing subordinates to arrest Plaintiffs, order Plaintiffs to empty their pockets, handcuff Plaintiffs, and transport Plaintiffs to jail.

52.     Defendants did not follow the procedures required by Texas law to hold individuals in contempt of court.  Defendants did not secure any evidence in support of allegations that Plaintiffs did not reside in Loving County and did not permit Plaintiffs an opportunity to be heard regarding the allegations.  There were no exigent circumstances that could justify an order of direct contempt, including because Plaintiffs were not disobeying any court orders, threatening the safety

11

of Court personnel, or otherwise disrupting ongoing proceedings. No reasonable law enforcement officer would have arrested Plaintiffs under these circumstances.

53.    Defendants were aware that each of the Plaintiffs owned property in Loving County, at times stayed overnight in Loving County, and had been registered to vote in Loving County for long periods of time. Defendants were further aware that Mr. Ingram, the lead elections official for the State of Texas, had informed Busse that persons who stay overnight in Loving County at least "a week or two" a year could be eligible to vote in Loving County. No reasonable law enforcement officer would have found probable cause for Plaintiffs' arrests under these circumstances.

54.    Through the actions described herein, Defendants violated Plaintiffs' rights to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

55.    The actions of Defendants directly and proximately caused injury to Plaintiffs, including the unlawful arrest and detention of Plaintiffs, the unreasonable and unjustified search of Plaintiffs' belongings, damage to Plaintiffs' reputations, embarrassment and humiliation, and mental and emotional distress.

56.    Defendants acted with malice and/or a reckless indifference and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

57.    Plaintiffs anticipate that Defendants may take similar unconstitutional actions in the future against Plaintiffs. Specifically, Plaintiffs have reason to believe that Defendants may cause further arrests or take other actions to prevent, coerce, or intimidate Plaintiffs from claiming residency in Loving County and exercising their lawful rights to vote in Loving County.

58.    Plaintiffs are therefore entitled to recovery of actual, compensatory, and punitive damages against Defendants pursuant to 42 U.S.C. § 1983. Plaintiffs are further entitled to

declaratory and permanent injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202.  Plaintiffs further seek payment of their attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT TWO**
**U.S. Const. Amendments I, XIV; 42 U.S.C. § 1983**
**Undue Burden on the Right to Vote**
**(All Plaintiffs Against All Defendants)**

59.    Under Federal Rule of Civil Procedure 10(c), Plaintiffs incorporate by reference all the allegations set forth above.

60.    The First Amendment to the United States Constitution, incorporated and applied to the states through the Fourteenth Amendment, prevents state officials from unduly burdening a citizen's right to vote.

61.    Each of the Plaintiffs is registered to vote in Loving County.  Each of the Plaintiffs owns property in Loving County, conducts business in Loving County, regularly sleeps overnight in Loving County, and intends to remain a resident of Loving County.  Plaintiffs were therefore entitled to vote in Loving County.

62.    The Defendants were aware that each of the Plaintiffs owned property in Loving County, at times stayed overnight in Loving County, and had been registered to vote in Loving County for long periods of time.  The Defendants were further aware that Mr. Ingram, the lead elections official for the State of Texas, informed Busse that persons who stay overnight in Loving County "a week or two" a year could be eligible to vote in Loving County.

63.    At all times relevant to this Complaint, each of the Defendants acted under the color of state law.

64.    Each of the Defendants knowingly and willfully caused and facilitated the issuance of jury summonses to Plaintiffs, participated in the planning and organization of the jury selection on May 25, 2022, ordered Plaintiffs arrested, and then directed subordinates to arrest Plaintiffs,

13

order Plaintiffs to empty their pockets, handcuff Plaintiffs, and transport Plaintiffs to jail in a neighboring county.

65.    Defendants undertook the actions described herein, in part, to prevent, coerce, and/or intimidate Plaintiffs from exercising their right to vote in Loving County.

66.    The arrest and detentions of Plaintiffs for claiming the right to vote in Loving County, and the threat of future arrests and detentions, imposed a burden on Plaintiffs' right to vote in Loving County.

67.    Defendants had no governmental interest so compelling as to justify the denial or abridgement of Plaintiffs' rights to vote, as guaranteed by the United States Constitution.  Even if such an interest existed, the Defendants had less restrictive means by which any such interest could have been met.

68.    Defendants therefore violated Plaintiffs' right to vote under the First and Fourteenth Amendments to the United States Constitution.

69.    The actions of Defendants directly and proximately caused injury to Plaintiffs, including the unlawful arrest and detention of Plaintiffs, the unreasonable and unjustified search of Plaintiffs' belongings, damage to Plaintiffs' reputations, embarrassment and humiliation, and mental and emotional distress.

70.    Defendants acted with malice and/or a reckless indifference and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

71.    Plaintiffs anticipate that Defendants may take similar unconstitutional actions in the future against Plaintiffs.  Specifically, Plaintiffs have reason to believe that Defendants may cause further arrests or take other actions to prevent, coerce, or intimidate Plaintiffs from exercising their lawful rights to vote in Loving County.

72.     Plaintiffs are therefore entitled to recovery of actual, compensatory, and punitive damages against Defendants pursuant to 42 U.S.C. § 1983.  Plaintiffs are further entitled to declaratory and permanent injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202.  Plaintiffs further seek payment of their attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT THREE**
**U.S. Const. Amendments I, XIV; 42 U.S.C. § 1983**
**Undue Burden on the Right to Speech**
**(Renteria against all Defendants)**

73.     Under Federal Rule of Civil Procedure 10(c), Plaintiffs incorporate by reference all the allegations set forth above.

74.     The First Amendment to the United States Constitution, incorporated and applied to the states through the Fourteenth Amendment, prevents state officials from unduly burdening a citizen's right to speech.

75.     Renteria is a County Commissioner for Loving County.  In that capacity, Renteria has publicly expressed views in opposition to those expressed by the Defendants on matters of public concern, including those relating to the expenditure of public funds.

76.     At all times relevant to this Complaint, Defendants acted under the color of state law.

77.     Each of the Defendants knowingly and willfully caused and facilitated the issuance of jury summonses to Plaintiffs, participated in the planning and organization of the jury selection on May 25, 2022, ordered Plaintiffs arrested, and then directed subordinates to arrest Plaintiffs, order Plaintiffs to empty their pockets, handcuff Plaintiffs, and transport Plaintiffs to jail in a neighboring county.

78.     Defendants undertook the actions described herein, in part, to prevent, coerce, and/or intimidate Renteria from exercising his right to speech regarding matters of public concern

in Loving County, among other topics.

79.    The arrest and detentions of Renteria, and the threat of future arrests and detentions, imposed an undue burden on Renteria's right to speak regarding issues of public concern in Loving County.

80.    Defendants had no governmental interest so compelling as to justify the denial or abridgement of Renteria's right to speech, as guaranteed by the United States Constitution.  Even if such an interest existed, the Defendants had less restrictive means by which any such interest could have been met.

81.    Defendants therefore violated Renteria's right to speech under the First and Fourteenth Amendments to the United States Constitution.

82.    The actions of Defendants directly and proximately caused injury to Renteria, including the unlawful arrest and detention of Renteria, the unreasonable and unjustified search of Renteria's belongings, damage to Renteria's reputation, embarrassment and humiliation, and mental and emotional distress.

83.    Defendants acted with malice and/or a reckless indifference and callous disregard for, and deliberate indifference to, Renteria's constitutional rights.

84.    Renteria anticipates that Defendants may take similar unconstitutional actions in the future against Renteria.  Specifically, Renteria has reason to believe that Defendants may cause additional arrests or take other actions to prevent, coerce, or intimidate Renteria's exercise of his constitutional rights in the future.

85.    Renteria is therefore entitled to recovery of actual, compensatory, and punitive damages against Defendants pursuant to 42 U.S.C. § 1983.  Renteria is further entitled to declaratory and permanent injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201,

2202.  Renteria further seeks payment of his attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### COUNT FOUR
**Section 11(b) of the Voting Rights Act; 52 U.S.C. § 10307(b)**
**Intimidation/Coercion Regarding Voting**
**(All Plaintiffs Against All Defendants)**

86.  Under Federal Rule of Civil Procedure 10(c), Plaintiffs incorporate by reference all the allegations set forth above.

87.  Section 11(b) of the Voting Rights Act, codified as 52 U.S.C. § 10307(b), provides that "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." This statute extends to private conduct and establishes a private cause of action.

88.  Each of the Plaintiffs is registered to vote in Loving County.  Each of the Plaintiffs owns property in Loving County, conducts business in Loving County, regularly sleeps at their properties in Loving County, and intends to remain a resident of Loving County.  Plaintiffs were therefore entitled to vote in Loving County.

89.  The Defendants were aware that each of the Plaintiffs owned property in Loving County, at times stayed overnight in Loving County, and had been registered to vote in Loving County for long periods of time.  The Defendants were further aware that Mr. Ingram, the lead elections official for the State of Texas, had informed Busse that persons who stay overnight in Loving County "a week or two" a year could be eligible to vote in Loving County.

90.  Each of the Defendants knowingly and willfully caused and facilitated the issuance of jury summonses to the Plaintiffs, participated in the planning and organization of the jury selection on May 25, 2022, ordered the Plaintiffs arrested, and then directed subordinates to arrest Plaintiffs, order Plaintiffs to empty their pockets, handcuff Plaintiffs, and transport Plaintiffs to jail in a neighboring county.

91.     Defendants' actions described herein threatened, coerced, and intimidated—and constituted an attempt to threaten, coerce, and intimidate—Plaintiffs from exercising their right to vote in Loving County, in violation of 52 U.S.C. § 10307(a).

92.     Plaintiffs are therefore entitled to recovery of actual and compensatory damages from  Defendants pursuant to 52 U.S.C. § 10307(b).  Plaintiffs are further entitled to declaratory and permanent injunctive relief pursuant to 52 U.S.C. § 10307(b) and 28 U.S.C. §§ 2201, 2202.

## COUNT FIVE
### Abuse of Process
### (All Plaintiffs Against All Defendants)

93.     Under Federal Rule of Civil Procedure 10(c), Plaintiffs incorporate by reference all the allegations set forth above.

94.     The Plaintiffs were each served with legal process in the form of summonses to appear at jury selection for the Loving County Justice of the Peace Court on May 25, 2022.

95.     Defendants made illegal, improper, and perverted use of said legal process after it was issued, including to accomplish an end other than the intended purpose of the legal process. As detailed herein, Defendants used the summonses as a ruse to compel each of the Plaintiffs to appear for jury selection and swear that they were residents of Loving County as a pretext to order the unlawful arrest of Plaintiffs.  Defendants took these actions with knowledge of facts indicating that Plaintiffs were, in fact, residents of Loving County and thus that the arrests were without legal basis.

96.     Defendants took these actions with ulterior motives, including to punish perceived political opponents, coerce Plaintiffs to take certain actions concerning management of the Jones family ranch, and to prevent, coerce, and intimidate Plaintiffs from exercising their right to vote in Loving County.

97.     Plaintiffs were injured as a result of Defendants' actions, including through the arrest, detention, and search of Plaintiffs and harm to Plaintiffs' reputations, embarrassment, humiliation, and mental and emotional distress.

98.     Defendants acted with malice, gross negligence, and fraud.

99.     Plaintiffs therefore seek actual, compensatory, and exemplary damages from each of the Defendants.

**COUNT SIX**
**Conspiracy to Deprive Constitutional Rights and Abuse Process**
**(All Plaintiffs Against All Defendants)**

100.     Under Federal Rule of Civil Procedure 10(c), Plaintiffs incorporate by reference all the allegations set forth above.

101.     As more fully set forth herein, all Defendants were part of a conspiracy that had as its objects the violation of Plaintiffs' constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, violations of the Civil Rights Act and the Voting Rights Act, and the abuse of process under Texas law.

102.     Each of the Defendants' relevant actions, as alleged herein, were undertaken under the color of law.

103.     All Defendants knew of each other's conduct as described herein. All Defendants knowingly, willingly, and enthusiastically participated in the improper arrests and other actions detailed herein.

104.     Defendants undertook the actions described herein with malice and/or a reckless indifference and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

105.     Defendants' actions in furtherance of the conspiracy were the actual and proximate cause of injury to Plaintiffs, including the unlawful arrest and detention of Plaintiffs, the

unreasonable and unjustified search of Plaintiffs' belongings, damage to Plaintiffs' reputations, embarrassment and humiliation, and mental and emotional distress.

106.    Plaintiffs anticipate that the Defendants may take similar unconstitutional actions in the future against Plaintiffs.  Specifically, Plaintiffs have reason to believe that Defendants may cause additional arrests or take other actions to prevent, coerce, or intimidate Plaintiffs from exercising their constitutional rights.

107.    Plaintiffs are therefore entitled to recovery of actual, compensatory, and punitive damages against Defendants.  Plaintiffs are further entitled to declaratory and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202.  Plaintiffs further seek payment of their attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT SEVEN
### Declaratory Judgment
### (All Plaintiffs Against All Defendants)

108.    Under Federal Rule of Civil Procedure 10(c), Plaintiffs incorporate by reference all the allegations set forth above.

109.    Plaintiffs seek declaratory relief against the Defendants.

110.    A justiciable controversy exists between the parties, including a dispute concerning whether Plaintiffs are legally entitled to vote in elections in Loving County and to serve as jurors in Loving County, as described herein.

111.    Plaintiffs seek a declaration that Plaintiffs are entitled to vote in elections in Loving County.

112.    Plaintiffs further seek a declaration that Plaintiffs are entitled to serve on juries in Loving County.

## VI.  <u>JURY DEMAND</u>

113.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs request a trial by jury on all issues so triable and have tendered the appropriate fee.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the following remedies individually and, in the alternative, where appropriate:

1.      Actual and compensatory damages as described herein;

2.      Exemplary and/or punitive damages;

3.      A permanent injunction preventing Defendants from taking any actions to prevent, coerce, or intimidate Plaintiffs from exercising their rights to vote or from serving on juries in Loving County, including any further arrests or law enforcement actions concerning Plaintiffs' claim to residency or right to vote in Loving County.

4.      Pre-judgment interest and post-judgment interest;

5.      Attorneys' fees and expenses to the extent recoverable under law;

6.      Declaratory judgment, as detailed above; and

7.      All other and further relief in law or equity to which Plaintiffs may otherwise be entitled.

Dated: August 22, 2022                    Respectfully submitted,

By: */s/ Jason M. Davis*
   Jason M. Davis
   State Bar No. 00793592
   Email:  *jdavis@dslawpc.com*
   Jay Hulings
   State Bar No. 24104573
   Email: *jhulings@dslawpc.com*
   **DAVIS & SANTOS, PLLC**
   719 S. Flores Street
   San Antonio, Texas 78204
   Tel.: (210) 853-5882
   Fax: (210) 200-8395
   ***Counsel for Plaintiff Matthew Jones***


By: */s/ John T. Wolf*
   John T. Wolf
   State Bar No. 24098629
   Email: *john@wolfstallings.com*
   **WOLF & STALLINGS PLLC**
   310 W. Wall Street, Suite 816
   Midland, Texas 79701
   Tel.:  (432) 848-3148
   Fax: (432) 848-3149
   ***Counsel for Plaintiff William L. Jones Carr***


By: */s/ J. Stephen Hunnicutt*
   J. Stephen Hunnicutt
   State Bar No. 10279510
   Email: *steve@hunnicutlaw.com*
   **THE HUNNICUTT LAW GROUP**
   17330 Preston Road, Suite 275-B
   Dallas, Texas 75252
   Tel.: (214) 361-6740
   Fax: (214) 691-5099

   Trent Graham
   State Bar No. 24084307
   Email: *trentgrahamlaw@gmail.com*
   **LAW OFFICE OF TRENT GRAHAM, PLLC**
   110 W. 5th Street
   Pecos, Texas 79772
   Tel: (432) 445-2127
   ***Counsel for Plaintiff Ysidro Renteria***