## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## PECOS DIVISION

MATTHEW JONES, YSIDRO
RENTERIA, WILLIAM L. JONES
CARR,
    *Plaintiffs,*

v.

AMBER M. KING, CHRIS H.
BUSSE, BRANDON W. JONES,
    *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§

P:22-CV-00030-DC

## <u>ORDER</u>

The legal system has long provided judges with immunity from suit for actions taken in their official capacity. Officers enforcing facially valid judicial orders are also protected from being sued. This case pushes up against the boundaries of that jurisprudence with two questions. First, is a judge, no matter how malicious or corrupt their actions are alleged to be, still entitled to judicial immunity for those acts? Likewise, are officers, who enforce judicial orders they allegedly knew were issued under a pretext or in bad faith, entitled to quasi-judicial immunity? According to longstanding precedent, they are.

### BACKGROUND

In April 2022, Defendant Amber King, who was the Justice of the Peace in Loving County, Texas at that time, sent a summons to prospective jurors. Plaintiffs Maththew Jones, Ysidro Renteria, and William Carr were among the recipients of that summons. One month later, Plaintiffs and the prospective jurors assembled in the annex of the Loving County Courthouse. And once there, King launched a juror qualification proceeding, stating that

anyone not qualified to serve as a juror could leave. But if anyone unqualified elected to stay, King warned that they would be charged with perjury and held in contempt of court.

Plaintiffs then swore to tell the truth about their qualifications as jurors. King then asked the prospective jurors if they were residents of Loving County. Plaintiffs affirmed that they were. Yet just after that, King proclaimed that "there are several jurors who are not residents of [Loving County]." King then identified each Plaintiff by name and ordered them arrested. Defendant Brandon Jones, who was the Constable for Loving County, escorted Plaintiffs into a hallway where they were arrested by a deputy sheriff working under the direction of the County Sheriff, Defendant Chris Busse. Plaintiffs were then escorted to county jail, where they remained for five hours, with King later releasing written orders that cited "direct contempt" as the basis for their arrest. Those contempt orders, however, were later vacated for abuse of discretion and violating due process. Plaintiffs sued in August 2022, alleging various violations of their constitutional rights under 42 U.S.C. § 1983. Plaintiffs allege many instances of bad faith, personal animus, and corrupt motive on Defendants' part, citing those instances as Defendants' motivation to violate Plaintiffs' constitutional rights.

After Plaintiffs amended their complaint, Defendants moved to dismiss, citing various immunity theories. On September 13, 2023, the United States Magistrate Judge's Report and Recommendation ("R&R") recommended that Defendants' motion be granted on most of Plaintiffs' claims. But the R&R also recommended that the motion be denied on Defendants' assertion of judicial immunity, quasi-judicial immunity, and qualified immunity for the general jury qualification proceeding and the contempt orders and arrests.

Defendants objected to the R&R's recommendation on those points. After considering the entire record and conducting a de novo review, the Court will adopt in part and reject in part the R&R.

LEGAL STANDARD

I. **Objecting to a Magistrate Judge's report and recommendation.**

A party may object to a Magistrate Judge's report and recommendations by filing written objections within 14 days after being served with a copy of the report and recommendations.[1] Failure to file written objections to the R&R within the required period bars that party from requesting that the district court review the R&R de novo.[2] A party's failure to timely object to the R&R also bars the party from seeking appellate review of proposed factual findings and legal conclusions accepted by the district court unless there is clear error to which no objections were filed.[3]

II. **Motion to dismiss for failure to state a claim.**

Under Rule 12(b)(6) of Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[4] "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right

---

[1] 28 U.S.C. § 636(b)(1).

[2] *Id.*

[3] *Id.*; *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *United States v. Wilson*, 864 F.2d 1219 (5th Cir. 1989) (per curiam).

[4] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

to relief above the speculative level.'"[5] In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6]

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[8] A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[9] A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim."[10] But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint.[11] "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'"[12]

## DISCUSSION

The Court starts by noting Plaintiffs did not object to the R&R's conclusion that parts of Plaintiffs' claims should be dismissed. So having reviewed those sections of the

---

[5] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[7] *Id.*

[8] *Id.*

[9] *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

[10] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

[11] *Dorsey*, 540 F.3d at 338.

[12] *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

R&R, the Court finds it neither clearly erroneous nor contrary to law. Thus, the Court will adopt the R&R's conclusion on those claims.

Defendants, on the other hand, object to three of the R&R's conclusions: (1) that King is not entitled to judicial immunity, (2) Busse and Jones are not entitled to quasi-judicial immunity, and (3) that Defendants are not entitled to qualified immunity for Plaintiffs' Fourth, Fourteenth, and First Amendment claims for the contempt orders and arrests. The Court handles each in turn.

## I.      Is King entitled to judicial immunity?

The unquestionable starting point is that judges generally have absolute immunity from suits seeking damages.[13] Yet "[t]wo narrow exceptions exist to this immunity: (1) if the actions are not taken in the judge's judicial capacity, and (2) if judicial action is 'taken in the complete absence of all jurisdiction.'"[14] And these two exceptions are the "only two sets of circumstances" where judicial immunity can be overcome.[15] So put simply, if a judge's actions don't fall under either of the two narrow exceptions, that judge is entitled to judicial immunity for those acts.

The R&R's analysis and Defendants' objections, center on the first exception—whether the jury qualification proceeding and the issuance of contempt orders were taken in King's "judicial capacity." "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself." In other words, was the act a "judicial function" normally

---

[13] *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221 (5th Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)(per curiam)).

[14] *Kastner v. Lawrence*, 390 F. App'x 311, 314  (5th Cir. 2010) (unpublished) (citing *Mireles v*, 502 U.S. at 11).

[15] *Mireles*, 502 U.S. at 11.

performed by a judge, and did the parties have the expectation that they were dealing with the judge in their judicial capacity?[16]

The issues here revolve around the first question: were the jury qualification proceeding and the issuance of contempt orders "normal judicial functions?"

### A.  Jury qualification as a general assembly.

For the jury qualification proceeding, the R&R first outlines the difference between a venire and voir dire for selecting a petit jury, concluding that the proceeding is a venire, also known as a general assembly.[17] Defendants do not dispute that conclusion. What is disputed, however, is whether jury qualification in a general assembly proceeding is itself a judicial act, rather than an administrative one.

The R&R concludes that qualifying jurors at a general assembly is a ministerial act, thus no judicial immunity for King.[18] The Court agrees with the R&R's conclusion, but for a simpler reason that the R&R discards: the Supreme Court's 1879 opinion in *Ex parte Commonwealth of Virginia* applies.[19] There, the Supreme Court "declined to extend immunity to a county judge who had been charged in a criminal indictment with discriminating on the basis of race in selecting trial jurors for the county's courts."[20] The R&R, however, states in a footnote that *Ex parte Virginia* is "too dissimilar."[21]

---

[16] *Mireles*, 502 U.S. at 12, (quoting *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)) (internal quotation marks omitted). The Fifth Circuit has distilled those two questions into four factors. *See*, *e.g.*, *Kastner*, 390 F. App'x at 314.

[17] Doc. 23 at 12.

[18] *Id.* at 18.

[19] 100 U.S. 339 (1879).

[20] *Forrester v. White*, 484 U.S. 219, 228 (1988) (quoting *Ex parte Virginia*, 100 U.S. at 348).

[21] Doc. 23 at 16, n.82.

But *Ex parte Virgina* is much like this case in striking ways. For example, the judge was qualifying jurors under a law that required him "to prepare annually a list of such inhabitants of the county or corporation, not less than one hundred, nor exceeding three hundred in number, as he shall think well qualified to serve as jurors, being persons of sound judgment and free from legal exception."[22] And the names of those qualified would be placed in a box, from which "the names of persons to be summoned as grand and petit jurors of the county are to be drawn."[23] Put another way, the judge was qualifying "the list of persons from whom the jurors are to be taken."[24]

Likewise,  a "venire" or  a general assembly is a "panel of persons selected for jury duty and from among whom the jurors are to be chosen."[25] Or as put by the Fifth Circuit, a "general determination" of whether someone is "unfit to try *any* case."[26] So on its face, the general assembly here is almost identical to the form and function of the qualification proceedings in *Ex parte Virginia.*

Yet that's not all; there are even more factual similarities between the cases. When the judge in *Ex parte Virginia* excluded certain jurors, he prevented them from serving as "grand and petit jurors."[27] The judge was also qualifying jurors for service in multiple courts *for the entire year.*[28] Thus, as in this case, the judge's actions took place at some point before the selection of a petit jury for a specific case.

---

[22] *Ex parte Virginia*, 100 U.S. at 349 (internal quotations omitted) (Field, J., dissenting).
[23] *Id.* (Field, J., dissenting).
[24] *Id.* (Field, J., dissenting).
[25] Venire, *Black's Law Dictionary* 1869 (Bryan A. Garner ed., 11th ed. 2019).
[26] *United States v. Leslie*, 783 F.2d 541, 554 (5th Cir. 1986), *overruled on other grounds*, *Leslie v. United States*, 479 U.S. 1074 (1987) (emphasis in original).
[27] *Ex parte Virginia*, 100 U.S. at 340.
[28] *Id.*

So circumstances so similar it is hard to see why the Supreme Court's reasoning in *Ex parte Virginia* would not apply.[29] And such reasoning is clear: "the duty of selecting jurors [in a general qualification proceeding] might as well have been committed to a private person as to one holding the office of a judge."[30] That is the case here—drawing names of prospective jurors under Texas law can be assigned to nonjudicial personnel like the county clerk or the sheriff.[31] What's more, the fact "[t]hat the jurors are selected for a court makes no difference."[32] So just like in *Ex parte Virginia*, the general qualification of jurors in this case was "merely a ministerial act" and thus not entitled to judicial immunity.

As result, the Court will overrule Defendants' objections on this point and adopt the R&R's conclusion—though for simpler reasons—that King is not entitled to judicial immunity for the general assembly proceeding.

## B.  Judicial immunity for contempt orders.

Although King is not entitled to judicial immunity for the general assembly, she may still be protected by it for the contempt orders. There's no question that contempt orders are typically "normal judicial functions."[33] The R&R, however, concludes that King is not

---

[29] The judge in *Ex parte Virginia* was conducting the qualification proceeding under one statute, when he violated a second, criminal statute that stated, "no citizen, possessing all other qualifications which are or may be prescribed by law, hall be disqualified from service as grand or petit juror in any court of the United States, or of any State, on account of race, color, or previous condition of servitude." The Supreme Court also later noted that "[a]lthough [*Ex parte Virginia*] involved a criminal charge against a judge, the reach of the Court's analysis was not in any obvious way confined by that circumstance." *Forrester v. White*, 484 U.S. 219, 228 (1988).

[30] *Ex parte Virginia*, 100 U.S. at 348.

[31] Tex. Gov't Code Ann. § 62.004; *see also* Doc. 23 at 17 (outline the various practices and procedures for general jury selection procedures under Texas law).

[32] *Ex parte Virginia*, 100 U.S. at 348.

[33] *Hennessey v. Blalack*, 1995 WL 71182, at *1–2 (5th Cir. Jan. 26, 1995) (unpublished) (citing *Malina v. Gonzales*, 994 F.2d 1121 (5th Cir. 1993)); *Nalls v. LaSalle*, 568 F. App'x 303, 306 (5th Cir. 2014) (unpublished) (observing that there was "no question" that a finding of contempt in the courtroom and arising out of a visit to the judge in her official capacity was a judicial act).

entitled to judicial immunity because King was "not motivated by any legitimate objective, but rather by personal or political animus."[34] Likewise, the R&R reasons that "*Harper* and *Zarcone* established an unwritten exception to the general judicial acts exception."[35] But that is incorrect for four reasons.

First, the Supreme Court has repeatedly held that the judicial immunity analysis should focus on the "nature and function of the act," not the act itself, or the intent or motive behind such act.[36] For example, in *Mireles v. Waco*, the Supreme Court clearly stated that "judicial immunity is not overcome by allegations of bad faith or malice."[37] Or, as stated by the Supreme Court in *Forrester v. White*, an act "does not become less judicial by virtue of an allegation of malice or corruption of motive."[38] This makes sense because "judicial immunity is an immunity from suit, not just from ultimate assessment of damages."[39]

The R&R, however, does not cite these Supreme Court cases in its analysis on this point. But that doesn't mean the R&R is unaware of those cases. Quite the opposite; the R&R contradicts its own conclusion six pages later in a footnote, noting the Fifth Circuit's more recent recognition "that, post-*Harper*, the Supreme Court 'stated that allegations of bad faith or malice cannot overcome judicial immunity.'"[40] Indeed, the R&R goes further, noting "[t]he only two possible pathways to circumvent the protections of judicial immunity are the

---

[34] Doc. 23 at 23.
[35] *Id.* at 24.
[36] *Mireles v. Waco*, 502 U.S. 9, 11 (1991).
[37] *Id.*
[38] *Forrester v. White*, 484 U.S. 219, 228 (1988) (citing *Bradley v. Fisher*, 80 U.S. 335, 354 (1871)).
[39] *Mireles v. Waco*, 502 U.S. at 11.
[40] Doc. 23 at 30, n.150 (citing *Morrison v. Walker*, 704 F. App'x 369, 373 (5th Cir. 2017) (unpublished) (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)).

aforementioned judicial act and clear absence of jurisdiction analyses."[41] So even the R&R recognizes the Supreme Court's clear position that there are no "unwritten exceptions to the general judicial acts exception."

Second, the Fifth Circuit has cast doubt that *Harper* even survives the Supreme Court's reasoning in more recent cases. For instance, four years after *Harper*, the Fifth Circuit noted in *Adams v. McIlhany* "that *Harper* is probably limited to its facts."[42] And more recently, in *Morrison v. Walker*, a per curiam Fifth Circuit further undermined *Harper*'s viability, looking to *Harper* only after "assuming *Harper* survives [the Supreme Court's reasoning in] *Mireles*."[43] So even if *Harper* survives the clear binding precedent that the "typical" judicial immunity analysis "ignor[es] allegations of personal motivation," the best-case scenario is that its holding is contained to its facts as noted by the Fifth Circuit in *Adams*.[44] And *Harper*'s facts are not the facts here.

Third, there are various cases where the Fifth Circuit has held a judge is entitled to judicial immunity for contempt orders despite open animus to the party on the receiving end of a contempt order. For example, in *Malina v. Gonzales*, state district court judge Douglas Gonzales began a traffic stop by placing a flashing red light on his dashboard after Thomas Malina honked at him.[45] Malina eventually pulled over, but after a brief back-and-forth, he drove off. Three hours later, a police officer came to Malina's home, telling him that Judge Gonzalez wanted to see him in court the next morning. The officer, who was there "unofficially as a favor to Judge Gonzales," informed Malina that Judge Gonzales could

---

[41] Doc. 23 at 31.
[42] 764 F.2d 294, 298 n.4 (5th Cir. 1985).
[43] *Morrison*, 704 F. App'x at 373.
[44] *Id.* (citing *Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006)).
[45] 994 F.2d 1121, 1123 (5th Cir. 1993).

10

issue a bench warrant for Malina's arrest if Malina did not appear. So Malina went to court the next morning as requested.[46]

Once there, Judge Gonzlez charged Malina with traffic violations for "fleeing to allude," "resisting an officer," "public endangerment," "disobeying an officer," "reckless driving," and "leaving the scene" because Malina drove off rather than let Judge Gonzalez complete the traffic stop.[47] And when Malina protested that he did not feel comfortable stopping for unmarked vehicles with flashing lights because anyone can buy such a light, Judge Gonzales cited Malina with contempt and sentenced him to five hours in jail. Malina was then handcuffed, fingerprinted, photographed, and imprisoned.[48]

The Fifth Circuit held Judge Gonzales was not entitled to judicial immunity for "neither the stop, the summons, nor the charging."[49] In contrast, Judge Gonzales was entitled to judicial immunity for the contempt citation and the five-hour jail sentence because "[b]oth the contempt citation and the sentencing were 'normal judicial functions.'"[50] Likewise, the Fifth Circuit reasoned that Judge Gonzales' actions were still in his official capacity, "despite the Judge's highly irregular 'summons.'"[51] So like in *Malina*, this case involves a judge, who, because of an alleged personal animus, issued a highly irregular summons, which ultimately concluded with Plaintiffs being held in contempt and sentenced to five hours in jail.

---

[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.* at 1124.
[50] *Id.*
[51] *Id.* 1125.

Lastly, the Court addresses the R&R's statement in a footnote that "[j]udicial immunity should only be denied at this stage because Plaintiff's factual allegations are taken as true."[52] While true in other 12(b)(6) contexts, that statement disregards the Supreme Court's clear direction that "judicial immunity is an immunity from suit, not just from ultimate assessment of damages."[53] Indeed, this is exactly why allegations of bad faith or malice do not suffice—such allegations "ordinarily cannot be resolved without engaging in discovery and eventual trial."[54] So like other forms of official immunity, judicial immunity means immunity from suit, not just from damages.

In sum, the question is whether issuing contempt orders is a judicial act. The plethora of case law says it is.[55] And the Supreme Court has been clear that there is no exception—unwritten or otherwise—to judicial immunity for "allegations of bad faith or malice."[56] Accordingly, the Court will sustain Defendants' objection on this point and reject the R&R's conclusion that King is not entitled to judicial immunity for the contempt orders.

## II.     Defendants Busse and Jones are entitled to quasi-judicial immunity.

With King entitled to judicial immunity for the contempt orders, the question of whether Busse and Jones are entitled to derivative, quasi-judicial immunity for enforcing the contempt orders is straightforward. The Fifth Circuit has concluded "that an official acting within the scope of his authority is absolutely immune from a suit for damages to the extent

---

[52] Doc. 23 at 25, n.122.
[53] *Mireles v. Waco*, 502 U.S. 9, 11 (1991).
[54] *Id.*
[55] *E.g.*, *Malina v. Gonzales*, 994 F.2d 1121 (5th Cir. 1993).
[56] *See Mireles*, 502 U.S. at 11.

that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction."[57]

There does not appear to be any dispute that Busse and Jones were acting within the scope of their authority when they arrested and transported Plaintiffs to jail. Rather, the arguments appear to center on whether King's contempt orders were "facially valid."

The R&R states that it "has not located, and the parties have not provided, any binding authority explaining the confines of 'facially valid' orders."[58] Yet that's not entirely true. The Fifth Circuit in *Mays* quotes at length from the Supreme Court's opinion in *Erskine v. Hohnback*, which helps explain what qualifies as a valid order:

> … it is well settled now, that if the officer or tribunal possess jurisdiction over the subject-matter upon which judgment is passed, with power to issue an order of process for the enforcement of such judgment, *and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law, or defect of jurisdiction over the person or property affected,* then, and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcement against any prosecution which the party aggrieved thereby may institute against him, although serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued.[59]

A valid order then, must be (1) regular on its face, (2) with no departure from the law, and (3) not possess a defect of jurisdiction over the person or property affected. And if the order fulfills all three, then "the order or process will give full and entire protection to the ministerial officer against any prosecution … although serious errors may have been

---

[57] *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996).
[58] Doc. 23 at 34.
[59] *Mays v. Sudderth*, 97 F.3d 107, 112 (5th Cir. 1996) (quoting *Erskine v. Hohnbach*, 81 U.S. 613, 616–17 (1871) (emphasis added)).

committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued."[60]

Here, there's no argument that King's contempt orders failed any of the three. Indeed, even the R&R states that "each of the contempt orders are facially valid," "they cite the correct Texas Government Code contempt section," and that King had jurisdiction to issue them.[61] And even though King's orders contained "serious errors"—they were later vacated through a writ of mandamus for abuse of discretion and violation of due process— Busse and Jones are still entitled to "full and entire protection against any prosecution."[62] So the answer is quite clear: Busse and Jones should have quasi-judicial immunity.

Yet even though the R&R admits that Busse and Jones would "be likewise entitled to quasi-judicial immunity for their actions in" enforcing facially valid contempt orders, it continues down the rabbit hole of whether it matters that Busse and Jones allegedly knew the contempt orders were not valid. The R&R thought it did; this Court does not for two simple reasons.

First, like judicial immunity, quasi-judicial immunity for an official acting within the scope of their authority, who is executing a facially valid judicial order, is immunity from suit.[63]  Because the protection is "similar" to judicial immunity, mere allegations about Busse and Jones' knowledge are not sufficient. For example, the Fifth Circuit in *Williams v. Wood*

---

[60] *Erskine*, 81 U.S. at  616–17.
[61] Doc. 23 at 30,33.
[62] *Erskine*, 81 U.S. at  616–17.
[63] *Mays*, 97 F.3d at 113.

states that "[d]amages will not be awarded for a clerk's actions of this type even if in bad faith or with malice."[64]

Second, there are substantial policy reasons fortifying quasi-judicial immunity for officers executing facially valid orders. Indeed, as stated by the Fifth Circuit in *Mays*, "[g]overnment officials should not be required to make the Hobson's choice between disobeying the court order or being haled into court to answer for damages."[65] It would be "obviously untenable" to "require sheriffs and other court officers enforcing facially valid orders "to act as pseudo-appellate courts scrutinizing the orders of judges."[66]

In sum, Busse and Jones have quasi-judicial immunity for their actions enforcing the facially valid contempt orders issued by King.[67]

## CONCLUSION

The Supreme Court is acutely aware that, because of longstanding precedent in favor of judicial immunity, "unfairness and injustice to a litigant may result on occasion."[68] With the seriousness of the allegations before the Court, this may well be such an occasion. But that does not sway the result.[69]

It is therefore **ORDERED** that the Court **ADOPTS** in part and **REJECTS** in part the R&R  (Doc. 23).

It is also **ORDERED** that Defendants' Motion to Dismiss be **GRANTED** as to:

---

[64] 612 F.2d 982, 985 (5th Cir. 1980).
[65] *Id.* at 113 (internal quotations omitted).
[66] *Id.*
[67] The Court need not address qualified immunity for Busse and Jones because they are entitled to quasi-judicial immunity.
[68] *Mireles v. Waco*, 502 U.S. 9, 11 (1991).
[69] Because of this Court's holdings, and the fact that Plaintiffs did not object to the R&R's conclusion that many of their claims should be dismissed, the Court is unsure what this case looks like moving forward.

- Plaintiffs' Fourteenth and First Amendment claims against Defendant King for her alleged actions in removing Plaintiffs from the eligible juror list on qualified immunity grounds;

- Plaintiffs' First Amendment claim against Defendants King and Busse for their actions in attempting to remove Plaintiff Renteria from the Loving County Appraisal Board on qualified immunity grounds;

- Plaintiffs' First Amendment claim against Defendant Busse for his actions as Voter Registrar on qualified immunity grounds;

- Plaintiffs' conspiracy claim to the extent it relates to the above three claims on qualified immunity grounds;

- Plaintiffs' Voting Rights Act claim against all Defendants;

- Defendants' assertion of judicial immunity as to Defendant King for Plaintiffs' claims on the contempt orders and arrests made under the Fourth, Fourteenth, and First Amendments; and

- Defendants' assertion of quasi-judicial immunity for Defendants Busse and Jones.

It is also **ORDERED** that Defendants' Motion to Dismiss be **DENIED** as to Defendants' assertion of judicial immunity for Defendant King for the general assembly proceeding. (Doc. 19).

It is also **ORDERD** that Defendants file an answer to Plaintiffs' Second Amended Complaint within 14 days of this order.

It is so **ORDERED**.

SIGNED this 4th day of November, 2023.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE