# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 1, 2025

Lyle W. Cayce
Clerk

---

No. 23-50850

---

Matthew Jones; Ysidro Renteria; William L. Jones Carr,

*Plaintiffs—Appellees/Cross-Appellants*,

*versus*

Amber M. King; Chris H. Busse; Brandon W. Jones,

*Defendants—Appellants/Cross-Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CV-30

---

Before Higginbotham, Willett, and Ho, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

Loving County in the heart of Texas's Permian Basin is the least-populous county in the continental United States. (It was, fittingly, the last county in America to report a case of COVID-19.) But what it lacks in population, it makes up for in petroleum. Sitting atop some of the nation's richest oil and gas reserves, this patch of West Texas—where pump jacks outnumber people—has long been home to bitter feuds among powerful families vying for political control over a massive tax base swollen by sky-high land values.

Three registered Texas voters allege that three local officials—a justice of the peace, a sheriff, and a constable—orchestrated a vengeful scheme to punish them as "personal and political adversaries." The facts are striking: Plaintiffs reported for jury duty only to be arrested and accused of falsely claiming eligibility by not actually residing in Loving County. Beneath it all lies a deeper battle over election integrity. Plaintiffs cast their votes in Loving County, but officials insist they don't live there. The officials contend they were merely enforcing Texas voter-eligibility rules and reining in non-residents who are skirting those rules in order to sway elections. Plaintiffs, by contrast, call it "lawfare," plain and simple—an abuse of law enforcement to settle political scores in a county where near-perfect turnout means elections are often decided by a handful of votes. In their telling, the arrests were a voter-roll ruse—a retaliatory scheme dressed up as voter enforcement, designed to silence dissent and avenge long-simmering personal and political grievances. Weighty though they are, those voter-eligibility disputes—what counts as "residency" and who may vote where—are not before us.

This case turns, instead, on a narrower yet no less consequential question: judicial immunity. Plaintiffs sued under § 1983, alleging that their arrests violated a host of constitutional rights. The district court granted judicial and quasi-judicial immunity on some claims but denied judicial immunity for actions tied to what Plaintiffs call a sham jury proceeding. Both sides now appeal. The officials seek reversal of the district court's denial of judicial immunity for the jury proceeding. Plaintiffs, on cross-appeal, contest the court's grant of immunity on other claims. We agree with the officials: presiding over the jury proceeding was a judicial act shielded by absolute judicial immunity. As for Plaintiffs' cross-appeal, we lack jurisdiction to review those claims at this interlocutory stage.

We thus REVERSE in part (due to judicial immunity) and DISMISS in part (due to lack of jurisdiction).

# I

At the pleadings stage, we accept all well-pleaded facts as true and view them in the light most favorable to the plaintiffs.[1]

The complaint alleges the following:

Loving County is Texas's least-populous county, home to fewer than 60 residents. A recent surge in oil and gas drilling has driven county revenue to historic highs. Unsurprisingly, the battle for local political control has intensified.

The parties here are, by all accounts, "personal and political adversaries." On one side are the plaintiffs—Matthew Jones, Ysidro Renteria, and William Carr—all registered voters in Loving County. On the other, are three local officials: Justice of the Peace Amber King, Sheriff Chris Busse, and Constable Brandon Jones.[2] This case is but the latest chapter in their long-running feud.

According to the complaint, the alleged conspiracy began in 2022, when Judge King informed the county clerk that she needed a jury "for an upcoming trial" and summoned a panel of prospective jurors. Plaintiffs joined other registered voters in a meeting room inside the courthouse annex. No case was called. There were no court reporters, no parties, and no counsel present.

Judge King addressed the group and told them that anyone not "qualified" to serve could leave voluntarily. She warned that those who

---

[1] *Davis v. Tarrant County*, 565 F.3d 214, 217 (5th Cir. 2009) (quotations and citation omitted).

[2] For clarity, we refer to Matthew Jones as "Jones" and Brandon Jones as "Constable Jones."

remained without being "qualified jurors" would be referred to the district attorney for aggravated perjury—a third-degree felony—and held in contempt of court. No one left.

The group was then sworn in, pledging to answer Judge King's questions about their "service and qualifications as a juror" truthfully. Judge King asked the panel about their age, literacy, citizenship, criminal history, and residency. Each confirmed their eligibility, including being a resident of Loving County.

Judge King then declared it had "come to [her] attention [that] there are several jurors"—namely, Plaintiffs—"who are not residents" of Loving County. Because they had not left at the outset of voir dire, Judge King held them in contempt and ordered them jailed for obstruction of justice. Constable Jones and a deputy sheriff escorted Plaintiffs into the hallway. They were handcuffed, jailed for five hours, and disqualified from jury service in Loving County.

Plaintiffs then filed suit. They allege that the officials orchestrated these events in calculated retaliation for Plaintiffs' political opposition—thus violating, and conspiring to violate, a range of constitutional rights. The officials moved to dismiss, invoking judicial and quasi-judicial immunity.

The district court granted the motion in part and denied it in part. The court held that Judge King was entitled to judicial immunity for issuing contempt orders but not for conducting the jury proceeding. It likewise extended quasi-judicial immunity to Sheriff Busse and Constable Jones for executing those contempt orders. The court dismissed all related claims. In sum, the only claims are those arising from the jury proceeding. The officials appealed the district court's refusal to dismiss certain claims, and Plaintiffs cross-appealed the dismissal of others.

## II

We begin with the officials' primary appeal—one squarely within our jurisdiction.[3] They contend the district court erred in two respects: (1) in declining judicial immunity to Judge King for presiding over the jury proceeding, and (2) in refusing to dismiss the conspiracy claim in its entirety. We review both arguments de novo.[4]

### A

The officials argue that Judge King is entitled to judicial immunity for her role in presiding over the jury proceeding. We agree.

"It is well established that judges enjoy absolute immunity for judicial acts performed in judicial proceedings."[5] Indeed, "immunity applies even when the judge is accused of acting maliciously and corruptly."[6] There are two—and only two—circumstances in which immunity yields:[7] when a judge acts outside her judicial capacity,[8] or when she acts in the clear absence of all jurisdiction.[9]

No party argues that Judge King acted without jurisdiction. The only question, then, is whether her actions were judicial in nature.

---

[3] *See Diaz v. Cantu*, 123 F.4th 736, 743 (5th Cir. 2024) (citing *Holloway v. Walker*, 765 F.2d 517, 521–22 (5th Cir. 1985)).

[4] *See id.* at 746; *see also Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

[5] *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996) (citation omitted).

[6] *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *see also Phan v. Hanen*, No. 23-20598, 2024 WL 3593902, at *1 (5th Cir. July 31, 2024) (unpublished) ("Judicial immunity also applies to acts alleged to have been done corruptly.").

[7] *See Davis*, 565 F.3d at 221.

[8] *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

[9] *Id.*

An act is not judicial simply because it is performed—or even commonly performed—by a judge. The law distinguishes "between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform."[10] Admittedly, that line can be hard to draw.[11] But our cases provide a familiar, four-factor test:[12] whether the challenged act (1) is a "normal judicial function," (2) "occurred in the courtroom or appropriate adjunct spaces," (3) is "centered around a case pending before the court," and (4) "arose directly out of a visit to the judge in [her] official capacity."[13] Notably, these factors are "broadly construed in favor of immunity."[14]

Still, the inquiry is not rigid.[15] Courts need not march through all four factors if one "overarching point" resolves the matter.[16] Some acts are "clearly" judicial—or so "inextricably linked" to judicial acts that no further analysis is needed.[17] The "touchstone" is whether the judge is "resolving

---

[10] *Davis*, 565 F.3d at 221 (quotations and citations omitted); *see also Forrester v. White*, 484 U.S. 219, 227 (1988).

[11] *Davis*, 565 F.3d at 221.

[12] *See Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (citation omitted); *see also McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972).

[13] *Ballard*, 413 F.3d at 515 (citation omitted).

[14] *Id.*

[15] *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993) ("In some situations, immunity is to be afforded even though one or more of the *McAlester* factors is not met."); *see also Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985) ("Nor are the factors to be given equal weight in all cases; rather, they should be construed in each case generously to the holder of the immunity and in the light of the policies underlying judicial immunity.").

[16] *Daves v. Dallas County*, 22 F.4th 522, 539 (5th Cir. 2022) (en banc).

[17] *Id.*

disputes between parties" or "authoritatively adjudicating private rights."[18] And the hallmark of a judicial act is the "exercise [of] a discretionary judgment."[19]

Here, Judge King was engaged in a traditional judicial function that called for discretionary judgment. Judicial immunity thus applies.

For context, jury qualification generally unfolds in three stages. First, is the jury-pool stage, where prospective jurors are pulled from public records—typically voter registrations or driver's licenses[20]—and qualified by clerks and other non-judges using basic statutory criteria: age, citizenship, criminal history, and residency.[21]

Second comes the venire stage. A subset of the jury pool is summoned to court and assembled in a general jury pool or general assembly.[22] There, a judge presides over a fresh round of questions and hears excuses and requests for exemptions.[23] Importantly, the general assembly is not yet tied to a specific case.[24]

---

[18] *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993) (quotations and citation omitted).

[19] *Id.* at 436 (quotations and citation omitted).

[20] *See* Tex. Gov't Code Ann. § 62.001.

[21] *See id.* §§ 62.001, 62.0132, 62.0142, 62.0145, 62.114; Tex. Code Crim. P. art. 35.03–.04.; *see also United States v. Leslie*, 783 F.2d 541, 554 (5th Cir. 1989).

[22] *Jasper v. State*, 61 S.W.3d 413, 422–23 (Tex. Crim. App. 2001).

[23] *Id.*

[24] *Id.*; *see also Leslie*, 783 F.2d at 554.

Third is the voir dire stage. At that point, eligible jurors are assigned to a particular case, and the parties—through their attorneys—probe for case-specific disqualifiers such as bias or conflicts of interest.[25]

The parties agree that Judge King was operating at the second stage: presiding over a general assembly. The question is whether that function is judicial in nature. We hold that it is.

When presiding over the general assembly, a judge qualifies jurors and hears exemptions and excuses.[26] Plaintiffs contend this is administrative, not judicial. They focus on the qualification component, arguing that because the statutory criteria are fixed, there's no room for discretion: a "prospective juror either satisfies the statutory criteria, or he does not." That may be true for statutory qualifications and exemptions.[27] But excuses are different. Judges are "not restricted to excusing prospective jurors for enumerated

---

[25] *Jasper*, 61 S.W.3d at 423; *See also Leslie*, 783 F.2d at 554.

[26] *Jasper*, 61 S.W.3d at 422–23; *see also* TEX. GOV'T CODE ANN. § 62.110; TEX. CODE OF CRIM. PROC. art. 35.03. The statutes are not a model of clarity as to whether the exemptions and excuses are heard during the general assembly stage or only at the final voir dire stage. However, the case law makes clear that "a judge presiding over a general assembly is assigned for the purpose of considering excuses from prospective jury members and determining whether any of the prospective jury members are eligible for statutory exemption." *Moore v. State*, 999 S.W.2d 385, 399 (Tex. Crim. App. 1999); *see also Chambers v. State*, 903 S.W.2d 21, 29 (Tex. Crim. App. 1995) (rejecting the idea that the trial judge must rule on excuses and disqualifications himself because they "had been ruled upon by the central jury room judge"); *Wells v. State*, 611 S.W.3d 396, 428 (Tex. Crim. App. 2020) ("General assembly members are qualified on their ability to serve, and exemptions and excuses are heard and determined by the judge presiding over the general assembly—or by 'the court's designee' in a case other than a capital felony case, pursuant to the plan adopted by the county commissioner's court. Prospective jurors who are not disqualified, exempt, or excused are then divided into trial panels and sent to the individual courts trying the cases." (citation omitted)); *Butler v. State*, 830 S.W.2d 125, 131 (Tex. Crim. App. 1992) ("Thus, the power to grant an excusal from jury service (pursuant to Article 35.03) inheres to the trial judge from the first assemblage of the array until the juror is, at last, seated.").

[27] *Jasper*, 61 S.W.3d at 423 n.4.

exemptions only."[28] They may excuse a juror for any excuse they find "sufficient."[29] And the decision is inherently discretionary, made "case by case."[30] For example, in *Leberta v. State*, the Court of Appeals held that a judge did not abuse his discretion in excusing a juror because the juror "might need to leave town if her mother had serious problems."[31] In other words, hearing excuses from jury service is a classic judicial function involving the exercise of quintessential judicial discretion. And presiding over a general assembly—where that discretion may be exercised—is a judicial act.

That a "court designee," rather than a judge, may preside over a general assembly does not undermine this conclusion.[32] The focus of the judicial-act inquiry is on the "nature of the function performed, not the identity of the actor who performed it."[33] That some judicial acts can be delegated to non-judges does not make them non-judicial.[34] When a court designee presides over the general assembly, his discretion to grant excuses is "functionally comparable to those of judges."[35] Indeed, Texas law bars

---

[28] *Id.* at 423.

[29] Tex. Gov't Code Ann. § 62.110(a); Tex. Code of Crim. Proc. art. 35.03 § 1; *see also Jasper*, 61 S.W.3d at 424 ("We have repeatedly held that a trial court has broad discretion to excuse prospective jurors for good reason under article 35.03.").

[30] *Jasper*, 61 S.W.3d at 423 n.4.

[31] 770 S.W.2d 828, 830 (Tex. App. 1988).

[32] *See* Tex. Gov't Code Ann. § 62.110(b); Tex. Code Crim. Proc. art. 35.03 § 2.

[33] *Forrester*, 484 U.S. at 229.

[34] *See Davis*, 565 F.3d at 222, 224; *see also Antoine*, 508 U.S. at 436 (recognizing that judicial immunity can be "extended to officials other than judges").

[35] *Antoine*, 508 U.S. at 436 (cleaned up). We also observe that a "court designee" is not simply any person a judge chooses to designate on a particular day. Instead, designees are appointed only pursuant to a plan recommended by a majority of the district and

designees from presiding over general assemblies in capital felony cases—reserving that role to judges alone.[36] If this were purely administrative, that distinction would make little sense. The distinction underscores that while presiding over a general assembly may be delegated to non-judges in some cases, this responsibility is reserved exclusively to judges when the stakes are highest.

The district court did not address the "hearing excuses" aspect of the role. Instead, it relied solely on *Ex Parte Virginia*,[37] where a judge was denied immunity for compiling a list of potential jurors, something the Court deemed "a ministerial act."[38] But that case involved the first stage of jury selection—the mechanical compilation of names from public rolls—not the second stage, where a judge hears individual excuses.[39] That key distinction makes *Ex Parte Virginia* inapposite.

True the record does not show that Judge King heard or granted any excuses while presiding over the general assembly.[40] But that is beside the

---

criminal district judges of a county and approved by the commissioners court of the county. *See* Tex. Gov't Code Ann. § 62.110(b), § 62.011(a).

[36] Tex. Code Crim. Proc. art. 35.03 § 2.

[37] 100 U.S. 339 (1879). In so doing, the district court expressly parted ways with the report and recommendation prepared by the magistrate judge, in which the magistrate judge concluded that *Ex Parte Virginia* was "too dissimilar" from this case.

[38] *Id* at 348–49.

[39] *Id.*; *see also Davis*, 565 F.3d at 225 (describing the judge's act in *Ex parte Virginia* as "compiling a list of qualified jurors").

[40] The dissent focuses on what Judge King actually did—confirming statutory qualifications—and concludes this was "plainly administrative." *Post* at 16. But that misframes the inquiry. As the Supreme Court has stressed, the touchstone is not whether discretion was exercised in a particular instance, but whether the function is "judicial in nature." *Mireles*, 502 U.S. at 13. Presiding over a general assembly of prospective jurors—even when applying objective criteria—falls squarely within that judicial role. Judges don't shed immunity simply because a task involves fixed statutory standards; countless judicial

point. As the Supreme Court has repeatedly emphasized, "the relevant inquiry is the nature and function of the act, not the act itself"—nor whether a particular discretion was exercised on a particular day.[41] Just as a trial judge is immune for presiding over a trial even if no rulings are made, a judge is immune for presiding over a general assembly even if no excuses are granted.

The remaining judicial-act factors reinforce this conclusion.[42] The proceeding took place in a courthouse annex—an appropriate adjunct space—and it arose directly out of a visit to Judge King in her official capacity.[43] The last factor is whether the act centered around a case pending before the court.[44] According to the complaint, Judge King called the jury pool "for an upcoming trial," though no specific case was identified. This factor likely favors Plaintiffs.

In sum, three of the four factors support a finding of judicial immunity. And under settled precedent, the factors must be considered broadly in favor of immunity.[45]

---

acts, from approving plea agreements to entering default judgments, involve yes-or-no determinations under bright-line rules. What matters here is that Judge King was performing an act historically and functionally reserved for the judiciary: qualifying a venire and hearing excuses under Texas law—a process that inherently calls for case-by-case judgment. Absolute immunity attaches to the act of presiding, not to whether a particular hearing was ho-hum.

[41] *Mireles*, 502 U.S. at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

[42] Plaintiffs describe the normal-judicial-function factors as "primary and dispositive" and relegate their discussion of the three remaining factors to a short footnote.

[43] *See Ballard*, 413 U.S. at 515.

[44] *Id.*

[45] *Id. See Malina*, 994 F.2d at 1124–25 (holding that issuing a contempt citation was a judicial act because it satisfied three of the four factors).

## B

In addition to alleging direct violations of their constitutional rights, Plaintiffs also brought a conspiracy claim under § 1983, alleging that the officials conspired to deprive them of those rights.

Although § 1983 permits conspiracy claims, such claims are "not actionable without an actual violation of section 1983."[46] Put differently, where a defendant is entitled to immunity for the alleged constitutional violation, he cannot be liable for conspiring to commit that same violation.[47]

The officials raise two issues related to the conspiracy claim. First, they express concern that although the district court granted them immunity for actions related to the contempt orders and dismissing the corresponding claims, it failed to dismiss the conspiracy claim arising from the same conduct. We acknowledge the concern but find it unwarranted. By granting immunity for the contempt-related conduct, the district court necessarily dismissed any conspiracy claim tied to that conduct—even if its ruling did not state so explicitly.[48]

Second, the officials contend that the district court should have dismissed the conspiracy claim premised on the jury proceeding because Judge King is entitled to immunity for that conduct. The district court allowed that portion of the conspiracy claim to proceed solely because it

---

[46] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).

[47] *Id.*; *see also See Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).

[48] To be clear, we are not affirming the district court's dismissal of the conspiracy claim premised on the contempt orders; we merely acknowledge that the dismissal inevitably flows from the district court's grant of immunity over those actions. Whether these conspiracy claims *should* be dismissed ultimately depends on whether the officials are properly entitled to immunity for the underlying contempt orders. And as explained in the next section of this opinion, we lack jurisdiction to reach that question.

Case 4:22-cv-00030-DC-DF Document 34 Filed 09/12/25 Page 13 of 20



denied judicial immunity for Judge King's role in conducting the jury proceeding. But as explained above, we conclude that Judge King's conduct in presiding over the jury proceedings was a judicial act entitled to absolute immunity. Accordingly, we agree with the officials that the conspiracy claim premised on the jury proceeding is no longer viable and must be dismissed.[49]

## III

On cross-appeal, Plaintiffs raise two challenges to the district court's grants of immunity. They argue: (1) Judge King is not entitled to judicial immunity for issuing the contempt orders; and (2) Sheriff Busse and Constable Jones are not entitled to quasi-judicial or qualified immunity for executing those orders. But we lack jurisdiction to review those claims at this stage and must therefore dismiss the cross-appeal.

Ordinarily, grants of immunity are not immediately appealable because they may be fully and effectively reviewed upon entry of final judgment.[50] Plaintiffs urge us to exercise pendent appellate jurisdiction. But that doctrine applies only in "rare and unique" circumstances.[51] Indeed, we have identified just four scenarios in which pendent jurisdiction is appropriate: (1) where "some issue in the properly brought interlocutory appeal . . . necessarily disposes of the pendent claim"; (2) where "addressing the pendent claim will further the purpose of officer-immunities by helping the officer avoid trial"; (3) where the "pendent claim would be otherwise

---

[49] *See Hale v. Townley*, 45 F.3d at 921.

[50] *See Thompson v. Betts*, 754 F.2d 1243, 1246 (5th Cir. 1985); *see also Comstock Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes of Texas*, 261 F.3d 567, 571 (5th Cir. 2001).

[51] *Escobar v. Montee*, 895 F.3d 387, 392 (5th Cir. 2018) (quotations and citation omitted).

unreviewable"; and (4) where the pendent and properly raised claims "involve precisely the same facts and elements."[52]

None of those scenarios applies here. The officials' appeal concerns judicial immunity for presiding over the jury proceeding. Plaintiffs' cross-appeal concerns judicial, quasi-judicial, and qualified immunity for actions related to contempt orders. Though the two sets of claims arise from the same dispute, they do not involve "precisely the same" facts or legal elements. Indeed, the differences—both factual and legal—between the jury-proceeding issue and the contempt-orders issue led the district court to treat them as distinct, analyzing them in separate sections of its ruling.[53] Nor does the resolution of the lead appeal necessarily resolve any issue raised in the cross-appeal. To the contrary, Plaintiffs seek to subject the officials to trial—precisely the outcome the immunity doctrines are designed to prevent. And because the challenged rulings are "capable of being fully and effectively reviewed after final judgment,"[54] there is no risk of unreviewability that might otherwise warrant pendent jurisdiction.

In sum, this is not one of the rare cases in which pendent jurisdiction is proper. Accordingly, we lack jurisdiction to review Plaintiffs' cross-appeal in its current, interlocutory posture.[55]

---

[52] *See id.* at 392–93.

[53] *See Gros v. City of Grand Prairie*, 209 F.3d 431, 437 (5th Cir. 2000) (declining to find pendent jurisdiction for claims that were treated separately by the district court and had unique elements and facts).

[54] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 214 (5th Cir. 2009) (citation omitted).

[55] We recognize, given our conclusion that Judge King receives immunity for the jury proceeding, that there may be little left for the district court to do when this case is returned to it. Nevertheless, "we may not expand our appellate jurisdiction for efficiency's sake." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1028 (5th Cir. 2022) (quotations and citation omitted); *cf. Utah v. Su*, 109 F.4th 313, 321 (5th Cir. 2024) ("Yet

* * *

This case may well be, as Plaintiffs contend, a bare-knuckled episode of political lawfare in the nation's least-populated county. Abusing judicial power to settle political scores is no small matter—and if true, it is plainly ignoble. But however troubling the allegations, qualifying a venire is a judicial act, and judicial acts are shielded by judicial immunity. The remedy for abusing that power lies not in § 1983 but in the voting booth.

Controlling precedent compels us to (1) REVERSE the district court's denial of judicial immunity to Judge King for presiding over the jury proceeding, and (2) DISMISS Plaintiffs' cross-appeal for lack of jurisdiction.

---

efficiency and economy—valuable, no doubt—have never been pursued at all costs, at least in our legal system."). Because the order granting immunity was not a final order and pendent jurisdiction does not apply, we lack jurisdiction and *must* dismiss this appeal. *See United States v. Powell*, 468 F.3d 862, 863 (5th Cir. 2006); *see also 21 Turtle Creek Square, Ltd. v. N.Y. State Teachers' Ret. Sys.*, 404 F.2d 31, 32 (5th Cir. 1968).

James C. Ho, *Circuit Judge*, dissenting:

Judge Amber King allegedly abused the juror qualification process in order to arrest and jail three long-time political adversaries. This is a textbook case of "lawfare"—"an abuse of law enforcement to settle political scores"—as the majority rightly acknowledges. *Ante*, at 2.

But the majority concludes that Judge King is entitled to judicial immunity. I disagree. Like the district court, I would deny judicial immunity and allow the case against Judge King to proceed to trial.

Judicial immunity hinges on "the nature of the act." *Davis v. Tarrant County*, 565 F.3d 214, 222 (5th Cir. 2009) (quoting *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam)). To determine whether judicial immunity applies, we examine "the precise act" at issue. *Id.* We "look to the particular act's relation to a general function normally performed by a judge." *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). *See*, *e.g.*, *id.* at 1123–24 (denying judicial immunity where judge directed a police officer "to unofficially summon" a citizen to court because the judge was "upset" that the person had "honked his horn" at him while driving).

Judge King qualified a venire by confirming the age, literacy, citizenship, criminal history, and residency of prospective jurors. This required no exercise of judicial discretion or judgment. Judge King qualified the venire in the same manner that court clerks qualify a jury pool—by confirming basic eligibility requirements. *See* Tex. Gov't Code § 62.001(b), (k) (tasking county and district clerks with excluding "persons exempt from jury service" from "jury wheel" due to age, literacy, citizenship, criminal history, and residency); *id.* at § 62.002 (same); *id.* at § 62.0145 ("if a written summons for jury service . . . is undeliverable, the county or district clerk" or "bailiff" "may remove the person's name from the record of names for selection of persons for jury service"). *See also* Tex.

Case 4:22-cv-00530-DC-DF Document 34 Filed 09/12/25 Page 17 of 20



Code Crim. P. art. 35.03 (except for capital felony cases, "the court's designee may hear," "determine," and "discharge" prospective jurors on "excuse[s] offered for not serving as a juror, including any claim of an exception or lack of qualification").

So Judge King's actions were plainly administrative, rather than judicial, in nature. I would therefore affirm the denial of judicial immunity. Accordingly, I respectfully dissent.

Certified as a true copy and issued as the mandate on Sep 12, 2025

Attest: Lyle W. Cayce

Clerk, U.S. Court of Appeals, Fifth Circuit

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 1, 2025

Lyle W. Cayce
Clerk

No. 23-50850
Summary Calendar

Matthew Jones; Ysidro Renteria; William L. Jones Carr,

*Plaintiffs—Appellees/Cross-Appellants*,

*versus*

Amber M. King; Chris H. Busse; Brandon W. Jones,

*Defendants—Appellants/Cross-Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CV-30

Before Higginbotham, Willett, and Ho, *Circuit Judges*.

JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the district court's denial of judicial immunity to Judge King for presiding over the jury proceeding is REVERSED, and Plaintiffs' cross-appeal is DISMISSED for lack of jurisdiction.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.

James C. Ho, *Circuit Judge*, dissenting.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

September 12, 2025

Mr. Philip Devlin
Western District of Texas, Pecos
United States District Court
410 S. Cedar Street
U. S. Post Office & Courthouse
Room 203
Pecos, TX 79772-0000

No. 23-50850 Jones v. King
USDC No. 4:22-CV-30

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Sincerely,

LYLE W. CAYCE, Clerk

By: _______________________
Renee S. McDonough, Deputy Clerk
504-310-7673

cc:
Mr. William Christian
Mr. Jason Murray Davis
Ms. Hayley C Ellison
Mr. Trent Graham
Mr. James Stephen Hunnicutt
Ms. Caroline Newman Small
Mr. Mark Stahl
Ms. Daniela Peinado Welsh
Mr. John Thomas Wolf